# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SONSIA STEWART,<br><br>    *Plaintiff*,<br><br>    v.<br><br>INTERNATIONAL UNION, SECURITY, POLICE AND FIRE PROFESSIONALS OF AMERICA,<br><br>    *Defendant*. | Civil Action No. 16-2526 (RDM) |

## MEMORANDUM OPINION

Plaintiff Sonsia Stewart, a former security officer, was fired by Paragon Systems, Inc. after allegedly falling asleep on the job. Her union, International Union, Security, Police and Fire Professionals of America ("SPFPA"), represented her during the grievance process, and she now asserts two claims against SPFPA stemming from her dismissal and those proceedings. She argues, first, that SPFPA breached its duty of fair representation by failing to press certain arguments with Paragon. Second, she contends that SPFPA breached the collective bargaining agreement between the union and Paragon by failing to ensure that she was reinstated or that the discipline that Paragon imposed was "otherwise modif[ied]." Dkt. 7 at 43 (Compl. ¶ 74). SPFPA has moved to dismiss for failure to state a claim, arguing that Stewart's duty of fair representation claim is time barred and that her contract claim is preempted by the Labor Management Relations Act. For the reasons explained below, the Court will **GRANT** the union's motion to dismiss.

# I. BACKGROUND

The complaint, Dkt. 7 at 32–54,[1] sets forth the relevant facts, which the Court must accept as true for purposes of the pending motion. See *Wood v. Moss*, --- U.S. ---, 134 S. Ct. 2056, 2065–67 & n.5 (2014).

In September 2009, Paragon hired Stewart to work the night shift as a Special Police Officer at a federal office building in the District of Columbia. Dkt. 7 at 33–34 (Compl. ¶¶ 9–10). As a Special Police Officer, Stewart was required to patrol the building throughout the evening and to stop at various checkpoints, but she was also permitted several breaks. *Id.* at 34 (Compl. ¶¶ 11–16). In the early hours of July 11, 2013, Stewart completed a "checkpoint" visit and retired to the women's locker room for a break. *Id.* at 36 (Compl. ¶ 30). She took off her utility belt and placed it on a nearby table so that she could straighten her uniform. *Id.* (Compl. ¶ 31). Denise Bright, a colleague with whom Stewart had quarreled, entered the room. *Id.* at 34–36 (Compl. ¶¶ 19–29, 31). Stewart "sat down and looked down to avoid seeing or conversing with [Officer Bright]." *Id.* at 36 (Compl. ¶ 33). When she "did not hear Officer Bright moving around," Stewart "became concerned [and] turned around to see what Officer Bright was doing." *Id.* (Compl. ¶ 34). At that moment, "Officer Bright placed her phone in . . . Stewart's face and took a picture of [Stewart]." *Id.* (Compl. ¶ 34). The photo depicts Stewart with "her eyes . . . closed and her equipment at her side."[2] *Id.* at 37 (Compl. ¶ 39). Officer

---

[1] Because the copy of the complaint attached to the notice of removal, Dkt. 1-2, is illegible, the Court will cite to the version of the complaint transmitted with the case file from the D.C. Superior Court. *See* Dkt. 7 at 26–27, 32–54.

[2] The complaint alleges contradictory facts with respect to the existence of the photo. *Compare* Dkt. 7 at 37 (Compl. ¶ 38) ("[Stewart] was presented with a picture of herself in the women's locker room from July 11, 2013, [which] appeared to show that her eyes were closed."), *with id.* at 39 (Compl. ¶ 47) ("No such picture [appearing to show Stewart asleep in the women's locker room] has ever been provided nor has there been any evidence of such a picture ever existing.").

Bright sent a copy of the photo to a more senior officer and reported to him that Stewart had been sleeping while on duty. *Id.* (Compl. ¶ 37).

On August 8, 2013, Stewart was summoned to a meeting with two senior officers and the union president. *Id.* (Compl. ¶ 38). At the meeting, "[s]he was presented with a picture of herself in the women's locker room from July 11, 2013, [that] appeared to show that her eyes were closed." *Id.* (Compl. ¶ 38). She was suspended that day and fired on August 20, 2013, for "neglect of duty and post abandonment." *Id.* at 52 (termination letter); *see id.* at 37 (Compl. ¶¶ 39–40).

By virtue of her employment at Paragon, Stewart became a member of SPFPA Local 296, "the sole and exclusive bargaining representative of [Paragon] employees." *Id.* at 33 (Compl. ¶¶ 7–8). As relevant here, the collective bargaining agreement between Paragon and SPFPA provided:

> No employee shall be discharged or disciplined without just cause, and discharge and discipline matters shall be subject to the grievance and arbitration procedures contained in the [a]greement. However, an arbitrator shall not have the authority to reduce a discharge or modify the discipline imposed by the Company for a proven violation of any of the following: . . . Neglect of Duty (including sleeping while on duty[)] [and] Unauthorized [P]ost [A]bandonment.

*Id.* at 42–43 (Compl. ¶ 71) (quoting agreement).

After her termination, Stewart and SPFPA initiated the grievance process set forth in the agreement. *Id.* at 37 (Compl. ¶ 41). Her union representative, Guy Thomas, informed her that he would seek reinstatement and backpay on her behalf and that she could "enter arbitration with the union to settle the case." *Id.* (Compl. ¶ 42). Meanwhile, Stewart applied for unemployment benefits from the District of Columbia. *Id.* at 38 (Compl. ¶ 44). Her claim was initially denied on the grounds that she had been fired for "gross misconduct," but she appealed and represented

herself at a hearing before an administrative law judge ("ALJ"). *Id.* (Compl. ¶ 44). The ALJ reversed the denial of unemployment benefits in November 2015. *Id.* (Compl. ¶ 44).

In April 2014, Thomas met briefly with Paragon representatives to schedule a meeting to discuss Stewart's termination. *Id.* at 37 (Compl. ¶ 43). Shortly thereafter, Stewart called him "to discuss what had happened at her unemployment hearing." *Id.* at 38 (Compl. ¶ 44). She informed Thomas that "the ALJ did not find evidence that she was asleep [while] working on July 9, 2013 [*sic*] . . . nor evidence that she had abandoned her post." *Id.* (Compl. ¶ 45). Thomas replied that the ALJ's findings "did not matter." *Id.* (Compl. ¶ 46). After meeting with Paragon's representatives a second time, Thomas "inform[ed] [Stewart that] she would not be rehired or receive [backpay]" due to the photo. *Id.* (Compl. ¶ 47). Stewart asked Thomas to proceed to arbitration "as was her right" under the collective bargaining agreement, but Thomas responded that the union would not pursue arbitration. *Id.* (Compl. ¶ 48). Stewart last spoke with Thomas on May 11, 2014. *Id.* at 38 (Compl. ¶ 49). He informed her that "the [u]nion fail[ed] to properly represent her[,] thus officially ending her employment." *Id.* (Compl. ¶ 49).

In October 2016, Stewart filed this action in D.C. Superior Court against SPFPA and Paragon. Her claims against Paragon for wrongful termination and breach of the collective bargaining agreement were dismissed after she failed to serve Paragon in a timely manner. *See* Dkt. 1-4 at 1; Dkt. 7 at 16. With respect to SPFPA, she alleges that the union breached both its duty of fair representation and the collective bargaining agreement. Dkt. 7 at 40–43 (Compl. ¶¶ 50–56, 70–75). She seeks $174,000 in damages and attorney's fees. *Id.* at 43–44 (Compl. Request for Relief).

SPFPA removed the action to this Court, Dkt. 1, and has now moved to dismiss for failure to state a claim, Dkt. 4. The union contends that Stewart's duty of fair representation

4

claim is time barred and that her contract claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Dkt. 4-1 at 4–6.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must "grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted). The Court, however, need not accept "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Because a statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), the plaintiff need not allege facts establishing the timeliness of her claim, *Marzorati v. MedStar-Georgetown Med. Ctr., Inc.*, --- F. Supp. 3d ---, No. 16-2161, 2017 WL 3016753, *2 (D.D.C. July 14, 2017). The defense may, nonetheless, "be raised by pre-answer motion under Rule 12(b)," but only if "the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Dismissal is improper, however, "as long as a plaintiff's potential rejoinder to the affirmative defense [is not] foreclosed by the allegations in the complaint." *de Csepel v. Republic of*

*Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013) (alteration in original) (internal quotation marks omitted).

## III. ANALYSIS

A. **Claim for Breach of the Duty of Fair Representation**

Stewart alleges that SPFPA breached its duty of fair representation by failing to bring certain facts to Paragon's attention in pursuing her grievance. *See* Dkt. 7 at 40–41 (Compl. ¶ 56). In response, the union argues that this claim arises under § 301 of the LMRA, 29 U.S.C. § 185, and is untimely. Dkt. 4 at 4–5. The Court disagrees that Stewart's duty of fair representation claim arises under § 301, but agrees that the claim is untimely.

A claim for breach of a union's duty of fair representation is "judicially cognizable" even though the National Labor Relations Board typically has "unfair labor practice jurisdiction over union activities." *Vaca v. Sipes*, 386 U.S. 171, 181 (1967). Such a claim does not, however, arise under § 301, as SPFPA posits. Rather, the claim is "implied under the . . . National Labor Relations Act," which allows "a single labor organization to represent collectively the interests of all employees [and] depriv[es] individuals in the unit [from] bargain[ing] individually." *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 164 & n.14 (1983); *see Clark-Williams v. Wash. Met. Area Transit Auth.*, --- F. Supp. 3d ---, No. 14-99, 2017 WL 1136936, at *5 (D.D.C. Mar. 25, 2017).

The union is correct, however, that Stewart's claim is untimely. The six-month statute of limitations in § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), governs Stewart's duty of fair representation claim. *DelCostello*, 462 U.S. at 155; *see also George v. Local Union No. 639*, 100 F.3d 1008, 1014 (D.C. Cir. 1996). That clock begins to run when the plaintiff "knew or should have known of the last action taken by the union [that] constituted the breach of duty of fair representation." *Delaney v. District of Columbia*, 612 F.

Supp. 2d 38, 42–43 (D.D.C. 2009) (citing *Watkins v. Commc'ns Workers of Am., Local 2336*, 736 F. Supp. 1156, 1160 (D.D.C. 1990)); *see Emory v. United Air Lines, Inc.*, 720 F.3d 915, 930 n.29 (D.C. Cir. 2013).

Because the union has raised its statute of limitations defense in a motion to dismiss, the Court must take the allegations of the complaint as true. *Iqbal*, 556 U.S. at 679. Moreover, because the statute of limitations is an affirmative defense, the Court may not fault Stewart for failing to include allegations in her complaint proactively establishing the timeliness of her claim. *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 343 n.12 (D.C. Cir. 1991). But, if "the factual allegations in the complaint . . . clearly demonstrate all elements of the statute of limitations defense and . . . the plaintiff has no viable response to the defense," the Court may dismiss the action. *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 38 (D.D.C. 2014) (emphasis omitted); *see Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam) ("[D]ismissal is appropriate only if the complaint on its face is conclusively time-barred.").

This is such a case. Stewart alleges that she was fired on August 20, 2013, Dkt. 7 at 37 (Compl. ¶ 40), and, more importantly, she alleges that her union representative told her on May 11, 2014, that the union would not "properly represent her," *id.* at 38 (Compl. ¶ 49). Thus, by Stewart's own allegations, she knew no later than May 11, 2014, that the union had declined to pursue her grievance. When she filed this action in D.C. Superior Court on October 14, 2016, Dkt. 1-4 at 2, two and a half years had elapsed. Her claim, therefore, falls well beyond the six-month statute of limitations.

That fact "does not end the inquiry, however, because the statute of limitations does not pose a jurisdictional hurdle, and it is thus subject to equitable doctrines." *Malloy v. Wash. Met.*

*Area Transit Auth.*, 187 F. Supp. 3d 34, 43 (D.D.C. 2016). And, indeed, Stewart invokes the doctrines of equitable tolling and equitable estoppel. Dkt. 15 at 4–6. Equitable tolling may be warranted "if despite all due diligence [a plaintiff] is unable to obtain vital information bearing on the existence of [her] claim," while equitable estoppel "prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998) (emphasis omitted).

Stewart's arguments for equitable tolling and estoppel collapse into a single theory: after she was fired, her union representative "led [her] to believe that she would be rehired," Dkt. 15 at 4 (equitable estoppel argument), or, in other words, he "lulled [her] into inaction," *id*. at 5 (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)) (equitable tolling argument). But this theory only gets Stewart so far—and not far enough for present purposes. Even if one accepts Stewart's premise that she had good reason to hold her fire while her union representative attempted to resolve matters in her favor, that would explain only why she waited from August 20, 2013, until May 11, 2014, to file suit. As she concedes, by May 11, 2014, she was aware that the union's efforts on her behalf had come to an end. *See* Dkt. 7 at 38 (Compl. ¶ 49).

Stewart's only response to this dilemma proves too much. She suggests that, because more than six months passed between her termination and the time when she might reasonably have known that she needed to pursue litigation, "the [u]nion should not be allowed to raise the statute of limitations." Dkt. 15 at 5. That is, because she justifiably failed to file within the six-month window following her termination, the statute of limitations should be treated as non-existent. But, if that were true, Stewart could have waited another five or ten years to file suit.

8

Not surprisingly, that is not how estoppel or tolling works. The statute of limitations is not eliminated, but merely suspended. *Cal. Pub. Empls.' Ret. Sys. v. ANZ Sec., Inc.*, --- U.S. ---, 137 S. Ct. 2042, 2050 (2017) ("[A] court [may] pause a statutory time limit . . . ."); *Smith-Haynie*, 155 F.3d at 579 ("[E]quitable tolling and estoppel . . . ask whether equity requires extending a limitations period . . . ."). And because any arguable suspension of the statute of limitations came to end approximately twenty-nine months before Stewart brought suit, her duty of fair representation claim falls well outside the six-month statute of limitations.

The Court will, therefore, dismiss Stewart's claim for breach of the duty of fair representation.

**B.     Claim for Breach of the Collective Bargaining Agreement**

Stewart also alleges that SPFPA breached its collective bargaining agreement with Paragon because it "did not reduce . . . Stewart's discharge or otherwise modify her discipline" despite the findings of the ALJ. Dkt. 7 at 43 (Compl. ¶ 74). The union argues that this claim is preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and thus should be dismissed. Dkt. 4-1 at 5–6. For the reasons explained below, the Court agrees that the claim should be dismissed.

As an initial matter, the Court notes that Stewart has not responded to this portion of the union's motion. "It is well understood in this Circuit," however, "that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, --- F. Supp. 3d ---, No. 15-1774, 2017 WL 3278839, at *7 (D.D.C. Aug. 1, 2017) (quoting *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 15, 25 (D.D.C. 2003)); *see also Davis v. Transp. Sec. Admin.*, --- F. Supp. 3d ---, No. 15-135, 2017 WL 3723862, at *3 (D.D.C. Aug. 28, 2017) (quoting *Xenophon*

9

*Strategies*, 2017 WL 3278839, at *7).  And, although the D.C. Circuit has expressed "concerns" about treating unopposed motions to dismiss as conceded, *see Cohen v. Bd. of Trs. of Univ. of D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016), it has not raised similar concerns about inferring that a party who *does* respond to such a motion but declines to address particular arguments has, in effect, conceded those arguments.  This is a meaningful distinction, moreover.  It is one thing for the Court to ensure that an unopposed, dispositive motion has legal merit; it is altogether a different thing for the Court to second guess the decisions made by counsel regarding which arguments to counter and which to leave unanswered.  Hence, Stewart's failure to respond to the union's contention that her contract claim is preempted by § 301 provides sufficient reason to dismiss that claim.

Stewart's contract claim, however, also fails on the merits.  To the extent that Stewart intends to assert a state-law claim for breach of contract against SPFPA, the union is correct that Stewart's claim is preempted by § 301 of the LMRA.  The Supreme Court has held in unmistakable terms that the LMRA preempts state-law claims that "require[] the interpretation of a collective-bargaining agreement," *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409 n.8 (1988), or "[are] substantially dependent on analysis of [its terms]," *id.* at 410 n.10.  It is equally clear, moreover, that this is such a case.  Stewart alleges that SPFPA "breached [the] collective bargaining agreement" by failing to "reduce [her] discharge or otherwise modify her discipline."  Dkt. 7 at 43 (Compl. ¶¶ 74–75).  Her claim plainly requires construction of the agreement and thus falls within the preemptive scope of § 301.  Accordingly, if Stewart intends to bring a state-law claim—as the union reads her complaint to do—that claim is preempted and must be dismissed.

That, however, leaves unanswered the question whether the complaint might be construed to allege a claim under § 301, as opposed to a state-law breach of contract claim. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of" a collective bargaining agreement, the claim "must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law."). Given Stewart's failure to take issue with the union's reading of her complaint, it seems fair to leave it at that; the union's reading of the complaint is eminently reasonable, and Stewart does not dispute that characterization. Understood in this light, Stewart intended to bring a state-law claim for breach of contract, recognized the force of the union's preemption argument, and, accordingly, abandoned the claim. This line of reasoning provides ample basis to dismiss Stewart's claim for breach of the collective bargaining agreement.

There is a second reason, moreover, why the Court will not read this count to allege a § 301 claim: to do so would be futile. As the D.C. Circuit has explained, the statute of limitations applicable to § 301 claims varies with context. *Cephas v. MVM, Inc.*, 520 F.3d 480, 484–90 (D.C. Cir. 2008). Thus, in *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696 (1966), the Supreme Court applied the analogous state-law statute of limitations applicable to breach of contract claims, while in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983), the Court applied the six-month statute of limitations found in § 10(b) of the NLRA. Stated in its simplest form, the general rule is that, where Congress has not specified a statute of limitations for a federal claim, courts "presumptively apply the limitation period that would apply to the state law claim that is 'most closely analogous' to the federal claim in suit." *Cephas*, 520 F.3d at 484 (citation omitted). That presumptive rule, however, is "overcome . . . when that state limitations period . . . would frustrate or interfere with the implementation of

national policies or be at odds with the purposes or operation of substantive federal law." *Id.* (internal quotation marks omitted). In a "hybrid" case involving a § 301 claim against an employer and a fair representation claim against a union, "the need for uniformity among procedures followed for similar claims as well as the clear congressional indication of the proper balance between the interests at stake" overcome the presumptive rule, and the same six-month statute of limitations applicable to a duty of fair representation claim under the NLRA applies, as well, to the accompanying § 301 claim. *DelCostello*, 462 U.S. at 171 (internal quotation marks omitted).

To the extent Stewart intends to assert a contract claim under § 301 (and to the extent she can do so against her own union), the reasoning of these decisions demonstrates that her claim should be subject to the same six-month statute of limitations that the Court has already held that she has exceeded. It is difficult to discern any meaningful difference between Stewart's duty of fair representation claim and her (hypothesized) § 301 claim. Most fundamentally, both allege that Stewart was fired without good cause, in violation of the collective bargaining agreement. *Compare* Dkt. 7 at 40–41 (Compl. ¶¶ 53–56), *with id*. at 42–43 (Compl. ¶¶ 71–75). To permit Stewart to circumvent the six-month statute of limitations applicable if her contract claim were framed as a duty of fair representation claim would frustrate the congressional policy and procedures embodied in the NLRA. *Cf. DelCostello*, 462 U.S. at 171.

The Court will, therefore, dismiss Stewart's claim for breach of the collective bargaining agreement.

## CONCLUSION

For the reasons above, the Court will **GRANT** Defendant's motion to dismiss, Dkt. 4.

A separate order will issue.

                                                /s/ Randolph D. Moss
                                                RANDOLPH D. MOSS
                                                United States District Judge

Date: September 26, 2017